# Illinois Official Reports

## Supreme Court

---

### *People v. Manning*, 2018 IL 122081

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ARTHUR MANNING, Appellee. |
| Docket No. | 122081 |
| Filed | March 22, 2018 |
| Rehearing denied | May 29, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Kane County, the Hon. Susan Clancy Boles, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Joseph H. McMahon, State's Attorney, of St. Charles (David L. Franklin, Solicitor General, Michael M. Glick and Lindsay Beyer Payne, Assistant Attorneys General, of Chicago, and Patrick Delfino, Lawrence M. Bauer, and Victoria E. Jozef, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.<br><br>Michael J. Pelletier, State Appellate Defender, Thomas A. Lilien, Deputy Defender, and Paul Alexander Rogers, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Elgin, for appellee. |

| Justices | CHIEF JUSTICE KARMEIER delivered the judgment of the court, with opinion. |
|---|---|
|  | Justices Freeman, Thomas, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion. |

## OPINION

¶ 1     The issue presented in this appeal, distilled to its essence, is whether jurors' inability to unanimously agree upon whether a mitigating factor exists, for purposes of second degree murder, results in a finding of first degree murder, as charged and as necessarily found by the jury in the required statutory progression. We hold that it does.

¶ 2                              STATUTE INVOLVED

¶ 3     In 2008, the second degree murder statute (720 ILCS 5/9-2 (West 2008)) provided in pertinent part:

> "(a) A person commits the offense of second degree murder when he commits the offense of first degree murder as defined in paragraphs (1) or (2) of subsection (a) of Section 9-1 of this Code and either of the following mitigating factors are present:
>
> > (1) At the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed ***; or
> >
> > (2) At the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable.
>
> (b) Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.
>
> (c) When a defendant is on trial for first degree murder and evidence of either of the mitigating factors defined in subsection (a) of this Section has been presented, the burden of proof is on the defendant to prove either mitigating factor by a preponderance of the evidence before the defendant can be found guilty of second degree murder. However, the burden of proof remains on the State to prove beyond a reasonable doubt each of the elements of first degree murder and, when appropriately raised, the absence of circumstances at the time of the killing that would justify or exonerate the killing under the principles stated in Article 7 of this Code.[1] In a jury

---

[1]In *People v. Fort*, 2017 IL 118966, ¶ 33, the majority opinion stated: "Because defendant was convicted of second degree murder, the State obviously failed to meet its burden of proof with respect to the absence of a mitigating factor." The suggestion that the State has such a burden is a misstatement of the law. The statute places no such burden on the State. The statute requires the State to prove "the absence of circumstances at the time of the killing that would *justify or exonerate* the killing under the principles stated in Article 7 of this Code." (Emphasis added.) 720 ILCS 5/9-2(c) (West 2016). The mitigating factors set forth in section 9-2 of the Criminal Code of 2012 do neither. Section 9-2 clearly places the burden of proof, with respect to the existence of those mitigating factors, on the defendant.

trial for first degree murder in which evidence of either of the mitigating factors defined in subsection (a) of the Section has been presented and the defendant has requested that the jury be given the option of finding the defendant guilty of second degree murder, the jury must be instructed that it may not consider whether the defendant has met his burden of proof with regard to second degree murder until and unless it has first determined that the State has proven beyond a reasonable doubt each of the elements of first degree murder."[2]

¶ 4                                    BACKGROUND

¶ 5        In 2008, the defendant, Arthur Manning, was charged in the circuit court of Kane County with three counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2), (a)(3) (West 2008)) based on the stabbing death of Naromi Mannery. Following a jury trial, defendant was found guilty of first degree murder (*id.* § 9-1(a)(1)) and sentenced to 29 years in prison. The appellate court reversed and remanded for a new trial, finding that the trial court abused its discretion in refusing to instruct the jury on self-defense. *People v. Manning*, No. 2-09-0752 (2011) (unpublished order under Illinois Supreme Court Rule 23).

¶ 6        The second trial, like the first, generally established that the victim was highly intoxicated and ultimately an unwelcome visitor at a residence occupied by defendant and at least five other individuals. The victim was asked to leave and refused to do so. A fight ensued between the inebriated victim and four of the residents, including the defendant. Defendant was armed with a knife. In the course of that fight, the victim, who was apparently unarmed, was stabbed three times. A stab wound to the chest proved fatal. Defendant admitted to stabbing the victim twice: once in the arm and once in the back. There was no evidence that anyone other than defendant was armed.

¶ 7        Pursuant to defendant's request—and the appellate court's prior directive—the trial court instructed the jury on self-defense. Relatedly, the court also granted defendant's request to instruct the jury on second degree murder, based on both statutory mitigating factors: an unreasonable belief in the need for self-defense and provocation, with mutual combat being the requisite provocation. See 720 ILCS 5/9-2(a) (West 2008). Hence, the jury received Illinois Pattern Jury Instructions, Criminal, Nos. 7.06B and 26.01A (4th ed. 2000) (hereinafter IPI Criminal 4th). Commensurate with the provisions of the second degree murder statute, IPI Criminal 4th No. 7.06B listed the elements of first degree murder and indicated that the State had to prove each element beyond a reasonable doubt. The instruction then informed the jury (1) if it found that the State had failed to prove each element of first degree murder beyond a reasonable doubt, it should stop deliberating and return a verdict of not guilty; (2) if it found that the State had proven each of those elements beyond a reasonable doubt, it should then decide whether defendant had proven that a mitigating factor existed; and (3) if it found that

_____

Defendant in this case "freely concedes that the majority in *Fort* may have erred by suggesting that the State must disprove a mitigating factor."

[2]The last sentence of subsection (c) has since been deleted (see Pub. Act 96-720, § 25 (eff. Jan.1, 2010) (amending 720 ILCS 5/9-2(c)), but the burdens specified by the legislature remain the same. The statute still requires, under subsection (a), a prerequisite finding that a defendant has "commit[ted] the offense of first degree murder" before a jury can find a defendant guilty of second degree murder. 720 ILCS 5/9-2(a) (West 2016).

defendant had met that burden, it should find him guilty of second degree murder; however, (4) if it found that defendant had failed to meet that burden, it should find him guilty of first degree murder. IPI Criminal 4th No. 26.01A instructed the jury that it would receive three verdict forms—(1) not guilty, (2) guilty of first degree murder, and (3) guilty of second degree murder—and that its verdict must be unanimous. The instruction directed the jury to sign only one verdict form.

¶ 8        During the course of deliberations in this case, the following colloquy occurred outside the presence of the jury:

"THE COURT: *** We received a question from the jury: For approving mitigating factors to reduce charge to second degree murder, if vote on mitigating factor is not unanimous, does it revert to first degree murder? Okay. Proposed responses?

[THE STATE]: Yes.

[DEFENSE COUNSEL]: My response would be no, Judge.

THE COURT: Okay. I will listen to respective—

[THE STATE]: The answer is yes and it's not no. I mean if—if they're unanimous, 12 to nothing for first degree murder, which either under a hypothetical they are or they are—and they're contemplating a second degree instruction, that has—or a charge—that has to be unanimous. If that's six to six or 11 to one, it's not found.

THE COURT: And I don't disagree with that. That's assuming and we know that that's the instructions and that they have to find first degree before they even get to the mitigating factors. I understand that. I'm not sure that an answer is just simply that that is clear enough, for lack of a better term.

* * *

[DEFENSE COUNSEL]: Judge, I think if they are—if we use the language that they have found guilty on first degree murder, and now that they are on the second theory, if they are not unanimous, doesn't say, all right, you six are wrong since we can't agree, or you 11 are wrong since you can't agree so it's guilty of first degree murder; that's not correct at all. So simply answering that question yes is leading the jury to believe that if one says a mitigating factor exists and 11 state a mitigating factor doesn't exist, if [*sic*] guilty of first degree, that's not true at all, Judge.

[THE STATE]: To be honest, I don't know the answer to that question. If they found 12 to nothing for first degree murder, and they contemplate second degree murder, I don't know what the answer to that question is. I think it has to be 12 to nothing to find that mitigating factor, but if we get to a point in time that they are deadlocked on that, if it's six to six, I don't think that's a hung jury, Judge. I might be wrong about that. I would have to do some research on that. But what's the hung—what are they hung on at that point in time?

THE COURT: Here's what I'm proposing responding and willing to listen to either side, simply to say: Your verdict must be unanimous. Continue deliberating.

[THE STATE]: I have no problems with that.

[DEFENSE COUNSEL]: I believe that's correct, Judge.

THE COURT: Okay. It is 1:22.

[THE STATE]: Judge, before you send that back, can we do some research, because I want to know whether—I don't know that it has to be unanimous to not find that mitigating factor.

THE COURT: But it's fair to say that this is correct, State, that in essence your verdict must be unanimous?

[THE STATE]: Well, I don't know whether the verdict on the mitigating factor—I know the verdict of a mitigating factor to find it has to be unanimous, but to not find it, I don't know that. It probably does, but I don't know that.

[DEFENSE COUNSEL]: Judge, there are two different things. I don't see how there would be any case law out there stating otherwise, that if it was 12 people found unanimously, that the first degree murder was proven, and then they went on to deliberate about the mitigating factor, and six of them decided yes, it does exist, then they're not unanimous on first degree murder or second degree murder. They're still split on what the charge is.

[THE STATE]: They're unanimous on first degree.

[DEFENSE COUNSEL]: But they are not unanimous on first degree murder because there's people who say that there is a mitigating factor that exists, so they are not unanimous on first degree murder.

THE COURT: Well, I don't think this is an incorrect statement of law and a response to this. This is not going to say to you, [State], that you can't do some research with regard to this issue, but at this point in time I am going to send this response back, and obviously we will figure out and hopefully have more clarity. If you wish to do that research, that's fine, but right now what it's going to say is: Your verdict must be unanimous. Please continue your deliberations.

[THE STATE]: That's fine."

¶ 9    The jury subsequently returned a verdict finding defendant guilty of first degree murder. After the verdict was read, the trial court asked the parties if either would like the court to poll the jury. Defense counsel responded: "I would, Judge, and I also ask to poll the jury on [*sic*] they found the mitigating factor did not exist." The clerk then asked each juror: "Was this then and is this now your verdict?" Each juror responded, "Yes." Thereafter, defense counsel stated: "I would like the specific question, if they found the mitigating factor did not exist, so—." The court stated its belief that the polling was sufficient: "I think they answered the question."

¶ 10    In a posttrial motion, defendant claimed as error the trial court's denial of defendant's request to poll the jury on the issue of "whether each jury member had found that a mitigating factor to reduce the charge to second degree murder existed." The circuit court denied defendant's motion, noting that the jury was in fact polled, that defense counsel had agreed with the court's response to the jury's question, and that defendant "did not have the right to have the jury polled as to specific factors, mitigating factors, or the like." Defendant was subsequently sentenced to 25 years in prison.

¶ 11    On appeal, defendant argued that "[t]he trial court reversibly erred where it: (a) failed to give a direct answer when the jury asked if non-unanimity regarding the mitigating factor meant that the charge would 'revert' from second degree murder to first degree murder; and

- 5 -

(b) refused to poll the jury specifically to determine if any juror believed that a mitigating factor existed."

¶ 12    The appellate court agreed with defendant, in part, on his first contention of error, concluding that the correct answer to the jury's question was "no." The appellate court's analysis of the central issue comprised three sentences:

> "To be sure, as indicated by IPI Criminal 4th No. 7.06B, the jury's consideration of the presence of a mitigating factor presupposes that the jury has unanimously found that the State has proven the elements of first degree murder. But a juror who goes on to vote to find the presence of a mitigating factor is voting to convict the defendant of second degree murder. Thus, if some jurors vote to find the presence of a mitigating factor, and if other jurors vote otherwise, the jury is not unanimous on the defendant's guilt of first degree murder." 2017 IL App (2d) 140930, ¶ 15.

Notwithstanding that pronouncement, the appellate court determined that defense counsel had acquiesced in the trial court's response to the jury's question and thus the invited-error doctrine applied to preclude relief based on defendant's first argument. *Id.* ¶ 19.

¶ 13    However, the appellate court held that defendant *was* entitled to relief on the basis of his second argument, concluding that the trial court had abused its discretion when it refused to ask each juror, in polling, whether he or she believed that a mitigating factor existed for purposes of second degree murder. The appellate court reasoned:

> "The jury's question starkly revealed the jury's uncertainty as to whether a split vote on the presence of a mitigating factor should (or should not) produce a verdict of guilty of first degree murder. After the jury delivered that verdict, the trial court's use of the standard polling question—'Was this then and is this now your verdict?'—did not resolve the uncertainty. To be sure, as shown by the jurors' unequivocal responses, there was no uncertainty as to whether the jurors' verdict was that defendant was guilty of first degree murder. The uncertainty at issue, however, concerned whether that verdict was wrongly the product of a split vote on defendant's guilt of second degree murder." *Id.* ¶ 23.

¶ 14    In holding that the trial court had abused its discretion, when it declined to conduct more specific polling, the appellate court purported to distinguish *People v. Raue*, 236 Ill. App. 3d 948 (1992), which presented a very similar fact pattern. This appellate panel summarized the circumstances of *Raue* thusly:

> "[T]he jury asked virtually the same question: ' "If we have all agreed to first degree murder and some of us feel there is a preponderance of evidence that a mitigating factor is present so that he is guilty of a lesser offense of second degree murder instead of first degree murder, the question is: If we cannot unanimously agree that there is a preponderance of evidence that a mitigating factor is present, is the final verdict first degree?" ' *Raue*, 236 Ill. App. 3d at 951. Finding that the instructions had been explicit, and fearing that a yes-or-no answer would effectively direct a verdict, the trial court responded by rephrasing IPI Criminal 4th No. 7.06B: ' "[i]t is the burden of the defendant to prove the existence of mitigating factors by a preponderance of the evidence, and if that burden has not been met, the verdict is one of first degree murder. If that burden has been met, the verdict is one of second degree murder. Whatever verdict you reach must be unanimous." ' *Raue*, 236 Ill. App. 3d at 951. The defendant

was convicted of first degree murder. In holding that no plain error had occurred, the appellate court noted, among other things, that the trial court had gone on to poll the jury by asking each juror only whether first degree murder 'was his or her verdict.' *Id.* at 952." 2017 IL App (2d) 140930, ¶ 24.

The appellate panel in this case claimed that *Raue* was distinguishable because the "defendant there, unlike defendant here, did not ask the trial court to poll the jury differently" and "although there the trial court's response to the jury's question merely rephrased the pertinent instruction *** that mere rephrasing might have been sufficient to alleviate confusion." *Id.* ¶ 25. The appellate court cited no authority that would substantiate the significance of those distinctions—assuming they even are plausible distinctions.

¶ 15                                                    ANALYSIS

¶ 16        The core question in this case—the resolution of which determines whether the trial court's response to the jury's question was correct and whether juror polling was sufficient—is whether the jurors' inability to unanimously agree, with respect to the existence of a mitigating factor for purposes of second degree murder, results in a finding of first degree murder, as charged by the State and as necessarily found by the jury in the required statutory progression. The answer to that question entails construction of the statutory scheme in order to discern the intent of the legislature. The construction of a statute is a question of law that we review *de novo*. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59-60 (2006).

¶ 17        In an effort to ascertain the legislature's intent with respect to the procedural mechanism of the second degree murder statute, we believe it instructive to consider the procedural features of the statute it replaced, *i.e.*, the voluntary manslaughter statute. As this court explained in *People v. Jeffries*, 164 Ill. 2d 104, 113 (1995), under the old homicide statute, the State—as now—had the burden to prove, beyond a reasonable doubt, the elements of murder. The defendant then had the opportunity to present evidence of a factor in mitigation, either serious provocation or unreasonable belief, which must have been present to reduce an offense of murder to voluntary manslaughter. *Id.* at 113-14. "The *State* then had the burden to prove, beyond a reasonable doubt, the absence of the factor in mitigation." (Emphasis in original.) *Id.* at 114. As this court observed in *Jeffries*: "Under the new act, *** the *defendant* now bears the burden to prove, by a preponderance of the evidence, one of the factors in mitigation which must be present to reduce an offense of first degree murder to second degree murder." (Emphasis in original.) *Id.*

¶ 18        Obviously, as this court recognized in *Jeffries*, the significant change the legislature saw fit to make was to take the burden of proving the *absence of* a mitigating factor from *the State* and to place the burden of proving the *presence of* a mitigating factor on *the defendant*. This court also clarified, in *Jeffries*, that second degree murder is properly characterized as "a *lesser mitigated offense* of first degree murder," that it is "first degree murder *plus* defendant's proof by a preponderance of the evidence that a mitigating factor is present." (Emphases in original.) *Id.* at 122. As the *Jeffries* court recognized, as the jury in this case was instructed, and as this court continues to affirm, "[t]he State must prove the elements of first degree murder beyond a reasonable doubt before *the jury* can even consider whether a mitigating factor for second degree murder has been shown." (Emphasis added.) *People v. Staake*, 2017 IL 121755, ¶ 40. "The jury"—not *some* jurors, rather the jurors unanimously—must first find that the State has

proven defendant guilty of first degree murder beyond a reasonable doubt before "the jury" can consider whether defendant has met the burden the legislature has imposed upon *him*, the burden of proving the existence of a mitigating factor by a mere preponderance of the evidence. See IPI Criminal 4th No. 7.06B (advising *the jury* that it "may not consider whether the defendant is guilty of *** second degree murder until and unless" it has "first determined that the State has proved beyond a reasonable doubt each" of the elements of first degree murder).

¶ 19    It is defendant's position that *his* failure to meet the modest burden the legislature has imposed upon *him*, *i.e.*, to convince "the jury" that a mitigating factor exists, should negate what is necessarily a unanimous finding that the State has proven defendant guilty of first degree murder beyond a reasonable doubt. His failure to meet his burden should, in effect, render the entire proceeding a nullity.

¶ 20    The appellate panel in this case appears to have come to that conclusion by taking a disjunctive view of the statutory scheme. According to the appellate court, "if some jurors vote to find the presence of a mitigating factor, and if other jurors vote otherwise, the jury is not unanimous on the defendant's guilt of first degree murder." 2017 IL App (2d) 140930, ¶ 15. However, the sequence of consideration dictated by the legislature is clearly to the contrary. First degree murder is the only finding upon which the jurors *are* unanimous. The jurors are not unanimous in making an additional finding for which defendant has the burden of proof, a finding of mitigation that would lessen the range of punishment imposable for the same conduct committed with the same mental state as that required for first degree murder. See *Jeffries*, 164 Ill. 2d at 122.[3]

¶ 21    Defendant would have us believe, (1) despite the legislature's decision to take the burden of proving the *absence of* a mitigating factor from *the State* and to place the burden of proving the *presence of* a mitigating factor on *the defendant* and (2) despite the legislature's requirement that "the jury" first find that the State has proven defendant guilty of first degree murder beyond a reasonable doubt before "the jury" can even consider whether defendant has met the burden the legislature has imposed upon *him*, that *his* inability to convince "the jury," even by a preponderance of the evidence, that a mitigating factor exists should result in a hung jury, essentially nullifying the entire proceeding.[4] "The process of statutory interpretation

_____

[3]We emphasize and reiterate that we are not here addressing the "justifiable use of force" or "exoneration" under article 7 of the Code. In order to first find that the State has proven defendant guilty of first degree murder, the jury must have found—and it was so instructed here—"[t]hat the defendant was not justified in using the force which he used." See IPI Criminal 4th No. 7.06B.

[4]We note in passing that there are some similarities in the structure of the statutory scheme here and that governing the consideration and rendering of a verdict of guilty but mentally ill (GBMI). Before a GBMI verdict may be rendered, the jury must find that (1) the State has proven beyond a reasonable doubt that the defendant is guilty of the offense charged, (2) defendant has failed to prove his insanity, and (3) defendant has proven by a preponderance of the evidence that he was mentally ill at the time of the offense. 725 ILCS 5/115-4(j) (West 2008). Though there is arguably less to gain for a defendant in a GBMI verdict, *i.e.*, the prospect of treatment as opposed to the assurance of a lower sentencing range (see *People v. Wood*, 2014 IL App (1st) 121408, ¶ 67), the legislature, nonetheless, has required that the jurors, *unanimously*, find those three elements—including defendant's proof, by a preponderance of the evidence, that he was mentally ill—before a GBMI verdict may be returned. It is incomprehensible that the legislature would have intended anything less here.

should not be divorced from consideration of real-world results, and in construing a statute, courts should presume that the legislature did not intend unjust consequences." *Fort*, 2017 IL 118966, ¶ 35. In *Fort*, this court concluded that "the State's reading of [that] statute" led "to unjust and absurd results." *Id.* Defendant's reading of this statute does that here.

¶ 22                                    CONCLUSION

¶ 23      We conclude that the legislature clearly intended that a defendant's failure to sustain *his* burden—the burden of convincing all 12 jurors that a mitigating factor exists for purposes of second degree murder—does not nullify the jurors' *unanimous* finding that the State has proven defendant guilty of first degree murder beyond a reasonable doubt. Given our holding, the trial court's response to the jury's question was correct when considered in conjunction with instructions the jurors had already received. The jurors, who had obviously proceeded beyond a unanimous finding of first degree murder—having followed the required, sequential statutory progression[5]—were advised that their verdict must be unanimous. They then returned a verdict of first degree murder, and subsequent polling verified that was indeed the verdict of each juror. The trial court's response to the jury's question was correct; the polling the trial court conducted was appropriate. Nothing more was required.

¶ 24      For the foregoing reasons, the judgment of the appellate court is reversed, and the circuit court's judgment is affirmed.

¶ 25      Appellate court judgment reversed.
¶ 26      Circuit court judgment affirmed.

---

[5]"Absent some indication to the contrary, we must presume that jurors follow the law as set forth in the instructions given them." *People v. Wilmington*, 2013 IL 112938, ¶ 49.